STATE OF CONNECTICUT *v.* ANGEL NATAL
(AC 28849)

DiPentima, Gruendel and Robinson, Js.

Argued January 6—officially released March 24, 2009

*Michael Stone,* special public defender, for the appellant (defendant).

*Richard K. Greenalch, Jr.,* special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Charles M.*

*Stango*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Angel Natal, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction for two years. The defendant claims that the court improperly (1) admitted testimony regarding the results of his urine tests and (2) considered testimony regarding his participation in inpatient substance abuse programs during the dispositional stage of the probation proceeding. We affirm the judgment of the trial court.

In 2004, the defendant was convicted of two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63. The court sentenced the defendant to two consecutive one year terms of incarceration, execution suspended, with three years of probation. Among the conditions of probation was the requirement that the defendant submit to "[d]rug screening, evaluation and treatment including random [urine testing] . . . ." In addition, the terms of the defendant's probation contained the standard prohibition against violating any criminal law of the state.

During his probationary period, the defendant's urine samples repeatedly tested positive for phencyclidine (PCP) and marijuana. Positive tests on June 6, July 13 and September 12, 2005, led to the defendant's referral to the technical violations unit, where he was assigned to probation officer Hilda Castillo. On October 13, 2005, Castillo and the defendant reviewed the conditions of probation, and the defendant again signed the conditions, indicating his understanding thereof and agreement to be bound thereby. Nevertheless, the defendant's urine samples dated October 13, 17, 21 and 31, and November 8, 2005, and January 25, February 2

and 27, and March 10, 14 and 23, 2006, all tested positive. In response to the positive tests, the defendant was referred to multiple drug treatment programs. He failed three such inpatient programs, namely, Connecticut Valley Hospital, Waterbury Alternative to Incarceration and Project Green. The defendant successfully completed the Horizon inpatient substance abuse treatment program from December 7, 2005, through January 4, 2006. He then was enrolled in the outpatient program at the Regional Network of Programs, from which he was negatively discharged on July 6, 2006, for failure to attend. Apart from his struggles with substance abuse, the defendant on May 22, 2006, was arrested and charged with assault of public safety or emergency medical personnel in violation of General Statutes § 53a-167c, breach of the peace in the second degree in violation of General Statutes § 53a-181 and interfering with an officer in violation of General Statutes § 53a-167a.

On September 5, 2006, Castillo filed an arrest warrant application for the defendant for violation of probation predicated on his fourteen positive urine tests, his failure to complete the outpatient treatment program and his May 22, 2006 arrest. The defendant subsequently was arrested and charged with violating the terms of his probation in violation of General Statutes § 53a-32.

By agreement of the parties, the court bifurcated the violation of probation hearing. During the adjudicative phase, the state offered the testimony of Castillo. The court thereafter found, on the basis of his positive urine tests, that the defendant had violated the conditions of his probation. In the dispositional phase of the violation of probation proceeding, Castillo opined that the defendant was not a candidate for further probationary supervision. The defendant testified that he presently was employed at a graphics company and that he provided support to his minor child. The defendant further stated

that he was addicted to PCP and admitted to using PCP and marijuana during his probationary period. The defendant testified that he had been unwilling to participate in certain inpatient drug treatment programs, acknowledging his failure at Connecticut Valley Hospital and Waterbury Alternative to Incarceration, but not his unsuccessful participation in Project Green. The defendant testified that despite his past failures, he now was prepared to follow through with such treatment. The defendant also testified that he had been arrested twice during his probationary period. Finally, the mother of the defendant's minor child testified that the defendant provided financial support for the child, that the defendant regularly visited the child and that she was unaware that the defendant had been using PCP and marijuana prior to hearing the defendant's testimony that day. At the end of the dispositional phase of the hearing, the court stated that "from my experience as a judge [and] as a defense lawyer, I've never seen a warrant that gave a person [so] many chances." The court thus determined that the beneficial purposes of probation were no longer being served, revoked the defendant's probation and committed him to the custody of the commissioner of correction for two years. This appeal followed.[1]

Before considering the defendant's precise claims on appeal, we first note that "the rules of evidence do not

---

[1] Although the defendant's two year sentence appears to have expired in December, 2008, the present appeal is not moot due to the collateral consequences doctrine. In *State* v. *McElveen*, 261 Conn. 198, 802 A.2d 74 (2002), our Supreme Court determined that subject matter jurisdiction existed over an appeal from the revocation of probation even though the probationer subsequently completed his term of incarceration. The court reasoned that there were collateral consequences that reasonably could ensue as a result of a probation revocation, such as a negative impact on a defendant's standing in the community and the ability to secure employment. Id., 213–16. Because there is a reasonable possibility that those collateral consequences will attach in the present case, the appeal is not moot.

apply to probation proceedings." *State* v. *Quinones*, 92 Conn. App. 389, 392, 885 A.2d 227 (2005), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006); see also Conn. Code Evid. § 1-1 (d) (4). "It is well settled that probation proceedings are informal and that strict rules of evidence do not apply to them. . . . Hearsay evidence may be admitted in a probation revocation hearing if it is relevant, reliable and probative." (Citation omitted.) *State* v. *Verdolini*, 76 Conn. App. 466, 471, 819 A.2d 901 (2003). At the same time, "[t]he process . . . is not so flexible as to be completely unrestrained; there must be some indication that the information presented to the court is responsible and has some minimal indicia of reliability." *State* v. *Young*, 63 Conn. App. 794, 800, 778 A.2d 1015, cert. denied, 258 Conn. 903, 782 A.2d 140 (2001).

I

The defendant claims that the court improperly admitted Castillo's testimony regarding the results of his urine tests. He argues that the state failed to provide a sufficient foundation for that testimony. We disagree.

During the adjudicative phase of the probation hearing, Castillo testified that the defendant was informed that pursuant to his conditions of probation, he was required to report on a weekly basis to the probation office to submit random urine samples, with which the defendant complied. Castillo testified that the urine analysis tests for the presence of, inter alia, "cocaine, heroin, [marijuana], PCP [and] alcohol." Castillo testified that the tests were administered at the probation office and that she personally had assisted in the collection of samples on multiple occasions. Regarding the protocol for urine testing, Castillo testified that she normally fills out the paperwork for the laboratory and has the probationer sign and initial that paperwork to

indicate that the probationer is both providing and sealing the particular sample. Castillo explained that she then takes the probationer to the bathroom and provides a cup. Castillo testified that once the sample was provided, she would retrieve it, "check the temperature, record it for the lab and then . . . send it to the lab [for testing]." Castillo testified that this procedure is followed at all times in her office. Castillo testified that she administered eleven urine tests for the defendant between October 13, 2005, and March 23, 2006, all of which tested positive for either PCP or marijuana. At the conclusion of the adjudicative phase, the court found that "the system that probation employed in terms of drug testing was reliable. Either [Castillo] supervised it or someone else supervised the taking of the urines, but it was done on the premises. The state laid a sufficient foundation to indicate how it was done. The court finds the system for testing drugs for probationers to be reliable."

On appeal, the defendant contends that because the state failed to proffer any identification of the specific manner in which the testing was conducted, the laboratories that tested the samples or their chain of custody, there was an insufficient foundation for Castillo's testimony. That distinct argument was not articulated to the court during the probation hearing, either by way of objection, cross-examination of Castillo or argument at the conclusion of the adjudicative phase of the proceeding. During that phase, the court heard detailed testimony concerning the protocol for collection of urine samples, with which Castillo testified that she complied in the present case. The court further heard testimony that in accordance with probation office protocol, the defendant's samples were submitted to the laboratory for analysis, which yielded positive results. The court, as the sole arbiter of credibility; see *Somers* v. *Chan*, 110 Conn. App. 511, 530, 955 A.2d 667 (2008);

was free to accept Castillo's uncontroverted testimony, which it expressly did. In addition, the court was presented with no evidence whatsoever impugning the validity of the testing. On that evidence, we conclude that the court properly determined that the information presented to the court regarding the collection and testing of the defendant's urine samples possessed some minimal indicia of reliability.

In addition, the defendant argues that the court should not have admitted Castillo's testimony concerning his urine tests without evaluating the testimony pursuant to the test for the admissibility of scientific evidence set forth in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), as adopted in this state by our Supreme Court in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). The defendant failed to preserve that claim before the trial court and now requests *Golding* review.[2] Because his claim is of evidentiary dimension, he cannot prevail. "Our Supreme Court has stated that once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed. . . . We previously have held that *Golding* does not apply to evidentiary claims,

[2] See *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40. *Golding*'s first two prongs relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jarrett*, 82 Conn. App. 489, 492 n.1, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

which, standing alone, do not rise to the level of constitutional magnitude that is required by *Golding*'s second prong." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, 86 Conn. App. 803, 811–12, 862 A.2d 880, cert. denied, 273 Conn. 909, 870 A.2d 1081 (2005). Other than a general invocation of his right to liberty, the defendant does not explain how his objection to the admission of Castillo's testimony is constitutional in nature. We are not persuaded by the defendant's attempt to transform an evidentiary issue into one of constitutional magnitude.

The defendant also seeks review as plain error under Practice Book § 60-5. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). The claim here does not present the type of extraordinary situation implicating that doctrine.

II

The defendant next claims that the court abused its discretion in revoking his probation. Specifically, he insists that during the dispositional phase of the probation proceeding,[3] the court improperly considered testimony regarding his failure in three inpatient substance abuse programs because they were not included in Castillo's arrest warrant application. The state maintains

---

[3] The record contains no indication that the court considered the defendant's participation in the inpatient substance abuse programs in finding him in violation of his probation. In his appellate brief, the defendant concedes that the "sole basis" for the court's finding during the adjudicatory phase that he had violated his probation was the positive urine tests.

that the testimony was reliable and relevant to the court's consideration of whether the beneficial purposes of probation were no longer being served. We agree with the state.

It is well established that "[a] revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 427, 773 A.2d 931 (2001). In evaluating the court's decision at the dispositional phase of the revocation of probation hearing, "[t]he standard of review . . . is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) Id., 426.

During the adjudicative phase of the probation hearing, Castillo testified that the defendant failed three inpatient drug treatment programs. The defendant did not object to that testimony. During the dispositional phase of the hearing, Castillo was asked whether the defendant was, in her opinion, a candidate for further probationary supervision in light of his positive urine tests and "three unsuccessful inpatient treatment programs," to which defense counsel objected. Counsel

stated: "I'd object in that only one inpatient treatment program is a—we're placed on notice for in the violation of probation warrant. The others are excluded and they're inappropriate." The court overruled the objection and allowed the question, to which Castillo responded that the defendant was not a candidate for further probationary supervision. The only other reference to the defendant's failure in the three inpatient treatment programs came during closing argument, when the prosecutor commented that the defendant had been given the "opportunity to go inpatient, and he's three out of four with regard to his treatment programs with regard to unsatisfactory progress in those programs."

On appeal, the defendant claims that the evidence of his failure in three inpatient drug treatment programs was admitted improperly, rendering the court's revocation of his probation an abuse of discretion. We do not agree. The dispositional phase of the probation hearing is a sentencing proceeding. As such, "the court may also consider the types of information properly considered at an original sentencing hearing . . . ." (Internal quotation marks omitted.) *State* v. *Young*, 81 Conn. App. 710, 716, 841 A.2d 737, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004). As our Supreme Court recently explained, "[a] sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . [and] evidence of crimes for which the defendant was indicted but neither tried nor convicted . . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the

circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." (Citations omitted; internal quotation marks omitted.) *State v. Bletsch*, 281 Conn. 5, 20, 912 A.2d 992 (2007).[4]

In resolving the ultimate question of whether the probationer is still a good risk, the court must determine whether the beneficial aspects of probation are no longer being served. The defendant's participation, or lack thereof, in three inpatient drug treatment programs was relevant to that inquiry. As his probation officer, Castillo's testimony that the defendant failed the Connecticut Valley Hospital, Waterbury Alternative to Incarceration and Project Green programs contained some minimal indicia of reliability. Furthermore, the defendant testified during the dispositional phase, without objection by his counsel, that he failed multiple

---

[4] The defendant argues that he is entitled to notice, by way of the arrest warrant application prior to the hearing, of any evidence that the state intends to present in the dispositional phase of the probation proceeding. He confuses the two distinct components of a probation proceeding. General Statutes § 53a-32 (c) provides in relevant part that "[a]t such [probation violation] hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge . . . ." Likewise, our decisional law holds that a probationer "cannot be found in violation of probation on grounds other than those with which he is charged." *State v. Pierce*, 64 Conn. App. 208, 215, 779 A.2d 233 (2001); see also *State v. Maye*, 70 Conn. App. 828, 839, 799 A.2d 1136 (2002) (requiring adequate notice of grounds on which probationer "was ultimately found to have violated his probation").

The defendant has provided this court with no authority indicating that the court's consideration in the dispositional phase of the proceeding is confined to the allegations of the arrest warrant application. That assertion is contrary to the holding of our Supreme Court that the trial court "may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information [it] may consider or the source from which it may come." (Internal quotation marks omitted.) *State v. Bletsch*, supra, 281 Conn. 20.

inpatient drug treatment programs in which he acknowledged an unwillingness to participate. The defendant also testified that he was addicted to PCP and admitted to using PCP and marijuana throughout his probationary period.

We conclude that the court properly admitted Castillo's testimony during the dispositional phase of the probation hearing regarding the defendant's failure in three inpatient drug treatment programs in ascertaining whether the beneficial purposes of probation were no longer being served. On the record before us, we cannot say that the court abused its discretion in revoking the defendant's probation.

The judgment is affirmed.

In this opinion the other judges concurred.