STATE OF CONNECTICUT *v.* ALIA K. ALTAJIR
(AC 31375)

Bishop, Beach and West, Js.

Argued May 17—officially released September 14, 2010

*Moira L. Buckley,* with whom, on the brief, was *Morgan P. Rueckert,* for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, was *David Shepack*, state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Alia K. Altajir, appeals from the judgment of the trial court revoking her probation and sentencing her to three years incarceration. The defendant claims that she was denied due process because (1) she did not receive adequate notice, (2) the state was not required to prove by a preponderance of the evidence certain "uncharged violations" of probation raised at the disposition hearing, and (3) the court admitted unreliable evidence and substantially relied on it in rendering its sentence. She also claims that the court abused its discretion by revoking her probation. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On July 10, 2004, the defendant was involved in a motor vehicle accident. At approximately 2:20 a.m., the defendant lost control of the vehicle she was driving. It crossed the highway and traveled down an embankment before becoming submerged in the Housatonic River. As a result of the accident, a passenger in the vehicle, Dustin Church, died by drowning.

The defendant was thereafter arrested and charged with one count of misconduct with a motor vehicle in violation of General Statutes § 53a-57 and one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2003) § 14-227a (a). The defendant subsequently pleaded nolo contendere to both counts.

The defendant's sentencing hearing was held on January 5, 2007. Pursuant to the defendant's plea agreement, the court imposed a total effective sentence of five years

imprisonment, execution suspended after one year, and five years probation, along with several conditions. The defendant was required, inter alia, to use an ignition interlock device[1] on any vehicle owned or operated by her, to attend school full-time or to obtain full-time employment, to perform fifty hours of community service each year of probation, not to operate a vehicle without a valid operator's license, to abstain from violating any laws and to refrain from leaving the state without permission.[2] The sentencing court stated: "So . . . there are ten or eleven conditions here, plus the normal conditions. If you do ten out of eleven, that is not good enough. If you violate one of those conditions you could be violated and wind up serving the balance of the four years."

The defendant served her prison term; her period of probation commenced on January 4, 2008. On April 17, 2009, the defendant was involved in a minor motor vehicle accident. A police investigation revealed that the defendant was driving the vehicle without an ignition interlock device installed on it and without a valid driver's license, both of which were requirements of her probation. As a result, an arrest warrant application was filed on the basis of these two alleged violations of probation. The defendant then was arrested and charged with violating her probation in violation of General Statutes § 53a-32.[3]

---

[1] General Statutes § 14-227j (a) defines an ignition interlock device as a "device installed in a motor vehicle that measures the blood alcohol content of the operator and disallows the mechanical operation of such motor vehicle until the blood alcohol content of such operator is less than twenty-five thousandths of one per cent."

[2] The record does not expressly indicate that refraining from leaving the state without permission was a condition of the defendant's probation. Neither party, however, contests the proposition that it was a condition. The only minor dispute over this issue is whether the defendant did in fact leave the state without permission and, thus, violate her probation.

[3] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation

The adjudicatory phase of the probation revocation hearing was conducted on May 19, 2009. At this hearing, the defendant knowingly and voluntarily admitted to the two violations of probation charged in the arrest warrant: operating a vehicle without a valid license and operating a vehicle without an ignition interlock device in violation of § 53a-32. The court accepted the plea, found the defendant to have violated the two conditions and continued the matter for disposition.

The dispositional phase of the hearing occurred on July 31, 2009. The state sought to have the defendant's probation revoked and the remaining four years of incarceration imposed. In support of this request, the state made several arguments as to why the defendant was no longer an appropriate candidate for probation. The state reiterated that the defendant admitted to having violated two conditions of her probation.[4] The state also alluded to conduct, which, if charged, could have constituted violations of probation. The conduct was not charged in the warrant or raised in the adjudicatory phase of the violation of probation proceedings. The state suggested that the defendant failed to attend school full-time and to obtain full-time employment. The state provided the defendant's college transcript, which indicated that she took only two evening classes during the spring, 2009 semester, both of which she failed. The defendant also conceded that she had failed to obtain any form of employment. The state further suggested that the defendant failed fully to perform her required community service hours.[5]

of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . ."

[4] The defendant presented evidence that by the time of this hearing she had received a valid driver's license and had installed an interlock device on the vehicle she was primarily operating.

[5] The defendant provided a Kent volunteer sign-in sheet showing that she was performing her community service hours in compliance with the terms

The state also maintained that several photographs of the defendant that were posted on her Facebook page indicated that she had left the state without permission.[6] Many of these photographs also depicted the defendant drinking alcohol and attending various parties and social events. The state conceded that drinking alcohol was not itself illegal and did not in itself violate a condition of the defendant's probation. The state argued, however, that inferences could be drawn that the defendant possibly could have been drinking and driving and that the photographs purported to show that she had not reformed, nor had she learned from her mistakes. After considerable discussion regarding the photographs, the state sought to have them admitted into

of her probation. The state, however, averred that the defendant's probation officer deemed the document unsatisfactory because it was not verified. Furthermore, the state consulted with the town of Kent, which was unable to confirm the hours listed on the sign-in sheet.

[6] Facebook is a social networking Internet site. It presents what is "essentially a template into which you may enter any information you choose. There is a place to upload an identifying picture and other personal or identifying information. Users may enter their relationship status; high schools, universities, and graduate schools attended; favorite music, movies, and books; hometown, current town, e-mail addresses, and home addresses." S. Millier, "The Facebook Frontier: Responding to the Changing face of Privacy on the Internet," 97 Ky. L.J. 541, 544 (2008-2009).

"Members may then start adding 'friends' on the network, usually people one knows from the non-digital world, who must confirm your friendship before being granted corresponding access to the other person's profile. Members may control who views their personal information: they may make it available system-wide without discretion, or they may limit access to just their friends. Members may create photo albums . . . and 'tag,' or identify by name, friends in their pictures. . . . By 'tagging' a photo, Facebook creates a link [to] the individual's profile from the photograph, making users easily identifiable, even when the viewer of the photograph is not 'friends' with the photograph's subjects. If a Facebook member in the picture objects, he can remove the link to his profile, but he can't get the picture taken down." Id.

This was not the first time the defendant's Facebook profile was at issue. Prior to the probation revocation proceedings, the defendant's Facebook profile and accompanying photographs were taken into account when determining the defendant's sentencing and probation agreement for her violation of §§ 53a-57 and 14-227a (a).

evidence. The court, *Ginocchio, J.*, admitted some of the photographs over the defendant's objection that they were cumulative and inflammatory.[7]

At the conclusion of the dispositional proceeding, the court stated that "I'm looking at these pictures, and all I can think of is, where is the remorse?" The court further stated that "[the defendant] should have had that device in the car, and that really causes the court a great deal of [concern] that she didn't do that, and it was one of the key points to the probation. She was supposed to abide by all conditions of probation. Her not doing two conditions of probation is egregious." The two conditions referred to were those that the defendant admitted to in the adjudicatory phase of the violation of probation proceedings. The court then sentenced the defendant to a total effective term of three years incarceration. This appeal followed.

I

The defendant claims that she was deprived of her right to due process under the federal constitution because she did not receive adequate notice that three "uncharged violations" of probation would be alleged at the dispositional phase of the revocation proceeding: failing to obtain full-time employment or to enroll in school full-time, failing to perform community service hours and leaving the state without permission. We disagree.

Our Supreme Court has "recognized that revocation of probation hearings, pursuant to § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual

---

[7] Before admitting the photographs into evidence, the court allowed the defendant some time to look through them. After giving the defendant a chance to examine the photographs, the state agreed to refrain from introducing approximately one half of the pictures into evidence.

determination by a trial court as to whether a proba-
tioner has violated a condition of probation must first
be made. . . . In the dispositional phase, [i]f a violation
is found, a court must next determine whether proba-
tion should be revoked because the beneficial aspects
of probation are no longer being served." (Internal quo-
tation marks omitted.) *State* v. *Barnes*, 116 Conn. App.
76, 80, 974 A.2d 815, cert. denied, 293 Conn. 925, 980
A.2d 913 (2009).

"[T]he due process clause of the fourteenth amend-
ment to the United States constitution requires that
certain minimum procedural safeguards be observed in
the process of revoking the conditional liberty created
by probation. . . . In this regard . . . [w]here non-
criminal activity forms the basis for the revocation of
probation . . . due process mandates that the [proba-
tioner] cannot be subject[ed] to a forfeiture of his liberty
for those acts unless he is given prior fair warning."
(Internal quotation marks omitted.) *State* v. *Bruce T.*,
98 Conn. App. 579, 586, 910 A.2d 986 (2006). "[A]sser-
tions that the defendant lacked prior notice of the condi-
tions underlying the probation revocation [involve a
question] of law for which our review is plenary." *State*
v. *Reilly*, 60 Conn. App. 716, 727, 760 A.2d 1001 (2000).

The defendant concedes that her claim was not prop-
erly preserved for appellate review and seeks review
under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d
823 (1989).[8] We agree that the record is adequate for

---

[8] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional
error not preserved at trial only if *all* of the following conditions are met:
(1) the record is adequate to review the alleged claim of error; (2) the claim
is of constitutional magnitude alleging the violation of a fundamental right;
(3) the alleged constitutional violation clearly exists and clearly deprived
the defendant of a fair trial; and (4) if subject to harmless error analysis,
the state has failed to demonstrate harmlessness of the alleged constitutional
violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Gold-
ing*, supra, 213 Conn. 239–40.

review and that the claim is of a constitutional magnitude; thus, we must determine if the alleged constitutional violation clearly exists.

"Probation itself is a conditional liberty and a privilege that, once granted, is a constitutionally protected interest. . . . The revocation proceeding must comport with the basic requirements of due process because termination of that privilege results in a loss of liberty. . . . [T]he minimum due process requirements for revocation of [probation] include written notice of the claimed [probation] violation, disclosure to the [probationer] of the evidence against him, the opportunity to be heard in person and to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses in most instances, a neutral hearing body, and a written statement as to the evidence for and reasons for [probation] violation." (Internal quotation marks omitted.) *State* v. *Shuck*, 112 Conn. App. 407, 409, 962 A.2d 900 (2009). "Despite that panoply of requirements, a probation revocation hearing does not require all of the procedural components associated with an adversarial criminal proceeding." (Internal quotation marks omitted.) *State* v. *Barnes*, supra, 116 Conn. App. 79.

Here, the defendant's probation revocation proceeding satisfied all the requirements mandated by due process. First, there is no contention that the defendant did not receive written notice of the two charged probation violations. The defendant was provided with the opportunity to contest the charges at a violation of probation hearing on May 19, 2009. The defendant, however, opted to admit the violations of probation alleged and waived her right to a hearing. Although the defendant waived her right to a hearing on the adjudicatory issues, she still had the opportunity of a hearing during the dispositional phase of the proceedings. We are persuaded that the

defendant had adequate opportunity to contest the information presented by the state.[9]

The defendant contends, however, that facts constituting violations of probation raised for the first time at the dispositional phase of the proceedings should be subject to the same due process requirements as those applied at the adjudicatory phase. We recently rejected a similar argument in *State* v. *Natal*, 113 Conn. App. 278, 289 n.4, 966 A.2d 331 (2009), in which we stated that a defendant is not entitled to formal notice, by way of arrest warrant application, of evidence that the state intends to present in the dispositional phase of a probation revocation proceeding.

Here, the defendant was informed as to the manner in which she was alleged to have violated her probation, and she admitted to such violations during the adjudicatory phase. The court did not find that the defendant was guilty of violating her probation for any reason other than the two violations charged in her arrest warrant, which the defendant admitted. A defendant is not entitled to formal notice of "uncharged violations" of probation that the state intends to present at the dispositional phase of a probation revocation proceeding. Our Supreme Court has stated that "[i]t is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come." *State* v. *Bletsch*, 281 Conn. 5, 20, 912 A.2d 992 (2007), citing *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). It is a settled principle that a court "can rely on the defendant's entire probationary

[9] There may be situations in which a defendant is legitimately surprised at a sentencing hearing by entirely new material "facts" that the defendant believes are erroneous or explainable. In such situations, continuances or other ameliorative measures may be required.

history in determining whether the rehabilitative purpose of probation is no longer being served." *State* v. *Brunette*, 92 Conn. App. 440, 454, 886 A.2d 427 (2005), cert. denied, 277 Conn. 902, 891 A.2d 2 (2006). We conclude that the defendant's notice satisfied the mandates of due process, and, thus, this claim fails under the third prong of *Golding* because no constitutional violation clearly exists.[10]

## II

The defendant next claims that she was denied due process of law under the federal constitution because the state was not required to prove the "uncharged violations" of probation alleged at the dispositional hearing by a preponderance of the evidence.[11] The

[10] The defendant makes a similar argument, contending that she did not receive notice that abstaining from alcohol was a condition of her probation and, thus, was deprived of her right to due process by having her probation terminated for this reason. The defendant seeks appellate review for this claim under *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that no constitutional violation clearly exists.

This allegation is not supported by the record. The defendant was charged only with two violations of probation, both of which she admitted. The state subsequently offered evidence of the defendant's drinking at sentencing because it was probative as to whether or not the rehabilitative purposes of probation were being served. The state contended that this evidence tends to show that the beneficial aspects of probation were not being served because the defendant was engaging in many of the same activities postincarceration as she engaged in before being incarcerated. The state specifically acknowledged that it was not illegal for the defendant to be drinking alcohol, and the court did not hold that she violated her probation by drinking alcohol.

As we discussed, the defendant is not entitled to formal notice of evidence that the state intends to present at the sentencing phase of a probation revocation proceeding. *State* v. *Natal*, supra, 113 Conn. App. 289 n.4. Therefore, we conclude that the defendant received adequate notice, and, thus, this claim fails under the third prong of *Golding* because no constitutional violation clearly exists.

[11] The defendant also makes a statutory construction argument, claiming that § 53a-32 (d) requires that uncharged violations of probation alleged at the dispositional phase of a probation revocation proceeding must be proven by a preponderance of the evidence. The defendant did not properly preserve this claim and asks us to exercise our supervisory power to afford it review.

We have previously stated that our "supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate

defendant argues that if the state is not required to prove additional violations presented at the dispositional phase by a preponderance of the evidence, it may make "an end run around" due process requirements. We disagree.

The defendant did not properly preserve this claim and therefore seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[12] We agree that the record is adequate for review and that the claim is of a constitutional magnitude; thus, we must determine if the alleged constitutional violation clearly exists.

We first note the proper standard of review for this claim. "When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007).

The United States Supreme Court has spoken to the issue of standard of proof at sentencing proceedings. The United States Supreme Court has acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ."[13] *McMillan* v. *Pennsylvania*, 477 U.S. 79, 92 n.8, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986). The Supreme Court reasoned that requiring strict adherence to the evidentiary standards observed in the adjudicatory phase would "hinder if not preclude all courts—state and federal—from making progressive efforts to improve the

to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *Smith* v. *Andrews*, 289 Conn. 61, 79, 959 A.2d 597 (2008). This case does not implicate the type of extraordinary circumstances for which our supervisory powers are reserved. Accordingly, we decline to exercise our supervisory power to review this claim.

[12] See footnote 8 of this opinion.

[13] The Supreme Court also stated that it saw "nothing in Pennsylvania's [sentencing] scheme that would warrant constitutionalizing burdens of proof at sentencing." *McMillan* v. *Pennsylvania*, 477 U.S. 79, 92, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986).

administration of criminal justice." *Williams* v. *New York*, 337 U.S. 241, 251, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). We have neither found nor been referred to binding federal authority requiring facts at sentencing to be proven by a preponderance of the evidence.

The defendant's assertion otherwise is contrary to Connecticut precedent. Our Supreme Court has held that "[i]t is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." (Citation omitted; internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986).[14] The court properly applied this standard, stating that "I think the court can consider any evidence in a sentencing hearing as long as I find it to be reliable."

The defendant argues that the minimal evidentiary standard, even if generally acceptable, should not apply to violations of probation alleged at the dispositional phase of the proceedings because it would be fundamentally unfair. The defendant argues that a violation of probation, charged or not, carries disproportionate weight. We see no reason why this proposition is necessarily so; indeed, in this case the "uncharged violations" did not appear to carry undue weight. If the adjudicatory phase has resulted in a finding of a violation of probation, there is no persuasive reason why "uncharged violations" should be treated differently from any other information. To raise the burden of proof for such allegations would hinder a sentencing judge's ability to

[14] When a defendant's criminal record and presentence investigation report are relied on at sentencing, a defendant is statutorily entitled to notice and an opportunity to correct inaccuracies. See General Statutes § 54-91b.

administer a fair and appropriate punishment. We conclude that the court applied the proper evidentiary standard at the dispositional hearing. Accordingly, this claim fails under the third prong of *Golding* because the defendant has failed to establish that a constitutional violation clearly exists.

### III

The defendant next claims that she was denied due process under the federal constitution because the court admitted unreliable Facebook evidence and substantially relied on it in rendering her sentence. The defendant contends that because the dates the photographs were "posted" on the Facebook page do not indicate when they were actually taken, the photographs were unreliable because it could not be confirmed that they were taken while she was on probation.

Having failed properly to preserve this claim for appeal,[15] the defendant seeks appellate review for this claim under *State* v. *Golding*, supra, 213 Conn. 239–40.[16] We conclude that the claim in the context of this case is not of constitutional magnitude and, thus, is not reviewable.

The defendant argues that this is a constitutional claim because the Facebook photographs were unreliable and, thus, introducing them into evidence violated her due process rights. It is well established, however, that "[e]videntiary claims do not merit review pursuant to *State* v. *Golding*, [supra, 213 Conn. 239–40], because they are not of constitutional magnitude. [R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will [not]

---

[15] The defendant objected at trial but not on the grounds asserted on appeal.

[16] See footnote 8 of this opinion.

change its essential nature . . . ." (Internal quotation marks omitted.) *State* v. *Nelson,* 105 Conn. App. 393, 413, 937 A.2d 1249, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). Therefore, we decline to review this claim because it fails under the second prong of *Golding.*

## IV

Finally, the defendant claims that the court abused its discretion by finding that the rehabilitative purposes of probation were no longer being served and by revoking her probation. The defendant contends that it was an abuse of discretion for the court to terminate her probation because it relied on "uncharged violations" of probation raised at sentencing, it did not require those uncharged violations to be proved by a preponderance of the evidence and it considered unreliable Facebook photographs. We disagree.

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday,* 268 Conn. 174, 185–86, 842 A.2d 567 (2004). "In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender . . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Bryant,* 98 Conn.

App. 602, 606, 910 A.2d 243 (2006), cert. denied, 281 Conn. 909, 916 A.2d 52 (2007).

Several of the defendant's contentions supporting this claim have already been addressed. As previously stated, the "uncharged violations" of probation raised at sentencing were not required to be proven by a preponderance of the evidence, and the state did satisfy its burden of showing some indicia of reliability to support its claims. Additionally, we established above that we decline to review the defendant's unpreserved evidentiary claim that the court improperly allowed the Facebook photographs into evidence.

The court stated expressly that the beneficial purposes of probation were not being served with the defendant. The court stated that it sensed a lack of remorse from the defendant. The fact that the defendant seemed to be acting in the same manner while on probation that she did prior to incarceration led the court to believe that she had not reformed and had forgotten the seriousness of her situation.

Furthermore, the court emphasized its concern over the fact that the defendant was driving a car without a license and without an ignition interlock device, violations of her probation that the court considered to be "egregious." On the basis of the record before us, we conclude that the court did not abuse its discretion in revoking the defendant's probation.[17]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] It should also be noted that the court sentenced the defendant to three years incarceration rather than the full four years requested by the state.