******************************************************

    The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DARRYL FLETCHER
(AC 39358)

Lavine, Alvord, and Keller, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
revoking his probation and committing him to the custody of the Com-
missioner of Correction for eighteen months. The defendant was charged
with violating his probation after he failed to verify his employment
with his probation officers, to complete a domestic violence treatment
program and to submit to a drug treatment program, and tested positive
for marijuana and cocaine use. On appeal, he claimed that, in the disposi-
tional phase of the hearing, the trial court improperly inferred from the
evidence that, for nearly a year, he had eluded service of the warrant
charging him with violation of his probation, and that the court, in
imposing the sentence, substantially relied on its faulty determination
that he had avoided being arrested. *Held:*

1. The state could not prevail on its claim that the appeal had become moot
   because there was no practical relief that could be afforded to the
   defendant, who had completed his sentence for violating his probation
   and had been released from the custody of the Department of Correction,
   as the appeal qualified for an exception to the mootness doctrine; despite
   the expiration of the defendant's sentence, there was a reasonable possi-
   bility that, in the event that the defendant were to face a sentencing
   court in the future, the court's determination revoking his probation
   and sentencing him to a period of incarceration could subject him to
   prejudicial collateral consequences, and there was also a reasonable
   possibility that the presence of the sentence on his criminal record
   could subject him to prejudicial collateral consequences affecting his
   employment opportunities and his standing in the community generally,
   and this court had the ability to provide the defendant practical relief
   by granting him a new dispositional hearing that could result in a more
   favorable outcome.

2. The defendant's unpreserved claim that the trial court improperly relied
   on a fact that was not part of the record when it found that he had
   tried to elude law enforcement in their efforts to serve the violation of
   probation warrant was unavailing; the information on which the court
   relied satisfied the requisite standard of reliability, as the court reason-
   ably inferred from the facts that the warrant officer had made reasonable
   efforts to locate the defendant but was unable to find him and that, as
   a consequence, law enforcement took almost a year to serve the warrant,
   and there was evidence in the record that the defendant's whereabouts
   were not readily ascertainable and that during the defendant's probation-
   ary period, he moved frequently, did not keep probation informed of
   his whereabouts and did not take any steps to make his whereabouts
   known or to turn himself in with respect to the warrant, and the defen-
   dant did not demonstrate that the inference drawn by the court was
   unreasonable or unjustifiable, as the court's inference from the warrant
   officer's testimony that the warrant officer was unable to locate the
   defendant for nearly a year was a logical conclusion based on the evi-
   dence and was not the product of speculation or conjecture.

Argued March 12—officially released June 26, 2018

*Procedural History*

Substitute information charging the defendant with
violation of probation, brought to the Superior Court
in the judicial district of New Haven, and tried to the
court, *B. Fischer, J.*; judgment revoking the defendant's
probation, from which the defendant appealed to this
court. *Affirmed.*

*Laila M. G. Haswell*, senior assistant public defender,

for the appellant (defendant).

*Jennifer W. Cooper*, special deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Karen A. Roberg*, assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. The defendant, Darryl Fletcher, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32 and sentencing him to a term of incarceration of eighteen months. The defendant claims that he is entitled to a new sentencing hearing because the court improperly relied on a fact that was not part of the record. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our analysis. In 1999, the defendant was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b), possession of marijuana in violation of General Statutes § 21a-279 (c), and three counts of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c. The defendant received a total effective sentence of twenty years, execution suspended after thirteen years, followed by five years of probation. This court affirmed the judgment of conviction. *State* v. *Fletcher*, 63 Conn. App. 476, 777 A.2d 691, cert. denied, 257 Conn. 902, 776 A.2d 1152 (2001).

The defendant's probationary period commenced when he was released from incarceration on November 17, 2011.[1] Among the court-ordered special conditions of the defendant's probation[2] was that he submit to drug screening, evaluation, and treatment and that he obtain full-time verifiable employment.

In 2015, the defendant was arrested and charged with violating his probation in violation of General Statutes § 53a-32. The defendant denied the charge. The matter was tried before the court on May 2, 2016. At the conclusion of the adjudicatory phase of the hearing, the court found that the state had proven that the defendant had violated several of the conditions of his probation. Specifically, the court found that the defendant did not verify his employment with his probation officers, failed to complete a domestic violence treatment program, failed to submit to a drug treatment program, and tested positive for marijuana and cocaine use. At the conclusion of the dispositional phase of the hearing, the court terminated the defendant's probationary status and sentenced him to serve a term of incarceration of eighteen months.[3]

On June 28, 2016, the defendant filed the present appeal. The defendant does not claim that the court erroneously determined, in the adjudicative phase of the hearing, that he violated his probation. The defendant claims that, in the dispositional phase of the hearing, the court improperly inferred from the evidence that, for nearly a year, he eluded service of the warrant

charging him with violating his probation.[4] Moreover, the defendant argues that, in imposing its sentence, the court "substantially relied upon its faulty determination that the defendant was avoiding being arrested . . . ." The remedy that he seeks from this court is a new sentencing hearing.

On August 31, 2017, after the defendant filed his principal brief, the state filed a motion to dismiss the appeal on the ground that it became moot when the defendant was released from the custody of the Department of Correction (department) on August 22, 2017. The state argued that this court could no longer afford the defendant, who was challenging only the manner in which the court imposed its sentence and not the finding that he had violated his probation, any practical relief. In his objection to the motion to dismiss, the defendant acknowledged that he had been released from custody on August 22, 2017, but argued that exceptions to the mootness doctrine applied and that this court should not dismiss the appeal. This court denied the state's motion without prejudice to the state, and permitted the state to address the mootness issue in its brief and the defendant to address the issue in his reply brief. They have done so. Additional facts will be set forth as necessary.

I

First, we address the state's argument that the appeal is moot because the defendant has completed his sentence. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . It is well settled that [a]n issue is moot when the court can no longer grant any practical relief." (Citation omitted; internal quotation marks omitted.) *Middlebury* v. *Connecticut Siting Council*, 326 Conn. 40, 53–54, 161 A.3d 537 (2017). "Under such circumstances, the court would merely be rendering an advisory opinion, instead of adjudicating an actual, justiciable controversy." *State* v. *Jerzy G.*, 326 Conn. 206, 213, 162 A.3d 692 (2017). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." *Glastonbury* v. *Metropolitan District Commission*, 328 Conn. 326, 333, 179 A.3d 201 (2018). "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief

through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 205, 802 A.2d 74 (2002). "If there is no longer an actual controversy in which [this court] can afford practical relief to the parties, we must dismiss the appeal. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citation omitted; internal quotation marks omitted.) *Medeiros* v. *Medeiros*, 175 Conn. App. 174, 196, 167 A.3d 967 (2017).

The parties do not dispute that because the defendant has completed his sentence, this court no longer has the ability to reduce the number of days he must remain incarcerated. On this ground, the state argues that this court may not grant any practical relief and that the appeal should be dismissed. In reply, the defendant argues that this appeal falls within two well settled exceptions to the mootness doctrine, namely, the collateral consequences exception as well as the exception for appeals involving issues that are capable of repetition yet evade review.

"[T]he court may retain jurisdiction when a litigant shows that there is a reasonable possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) *State* v. *Reddy*, 135 Conn. App. 65, 69–70, 42 A.3d 406 (2012); see also *Williams* v. *Ragaglia*, 261 Conn. 219, 226, 802 A.2d 778 (2002) (litigant bears burden of demonstrating reasonable possibility that prejudicial consequences will occur); *State* v. *McElveen*, supra, 261 Conn. 205 (same).

The defendant argues: "The record of jail in his criminal history will stigmatize him in the community for the rest of his life and hinder his efforts to obtain meaningful employment. And if he is ever charged with another crime, judges and prosecutors will factor in the defendant's incarceration when determining a sentence." Also, the defendant argues: "Although our citizens suffer greatly from the collateral consequences of convictions, it is simply not the case that all collateral consequences arise from the conviction alone. Any

potential employer or school admissions office would know from the defendant's record that he has served time in prison. They would understand that during that time the defendant was not learning new skills and was not making connections within the community that would benefit future employment. Just the fact that the defendant's transgressions had earned him the most severe punishment possible in our criminal justice system, rather than a fine or more probation, will hurt him because the stigma of incarceration is much heavier than other, lesser sentences. . . . To suggest otherwise ignores the very real barriers that former inmates contend with every day after they are released from jail and return to their communities." (Footnote omitted.)

Essentially, the defendant's appeal is based on what he claims to be error in the court's determination to revoke his probation. "Our Supreme Court has recognized that revocation of probation hearings, pursuant to [General Statutes] § 53a-32, are comprised of two distinct phases, each with a distinct purpose. . . . In the evidentiary phase, [a] factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . In the dispositional phase, [i]f a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Altajir*, 123 Conn. App. 674, 680–81, 2 A.3d 1024 (2010), aff'd, 303 Conn. 304, 33 A.3d 193 (2012). The defendant argues that the court's allegedly erroneous finding in the dispositional phase led it to revoke his probation and order him to serve a substantial portion of his unexecuted prison sentence. He argues that, in the absence of the court's error, it may have imposed a lesser form of punishment, including permitting him to remain on probation.

With respect to employment and his standing in the community generally, the defendant has identified what he believes to be a reasonable probability of prejudicial collateral consequences that do not arise from the court's finding that he violated his probation, but the fact that, in the dispositional phase of the proceeding, the court revoked his probation and sentenced him to a term of incarceration.[5] Also, the defendant argues that there is a reasonable probability that, if he were to be convicted of a crime in the future, the court's sentence could result in his receiving greater punishment by a future sentencing court. The defendant argues that a future sentencing court could learn from his criminal record that he had been sentenced to serve time in prison for violating his probation and use this information to his detriment. The defendant argues: "A jail sentence reveals to future sentencing courts that the defendant failed to demonstrate [that a lesser form of punishment was appropriate] . . . and that the beneficial aspects of [the defendant's] probation could [not]

continue to be served by allowing the defendant to remain on probation. . . . Such information signals to the court that the defendant's violations were serious and that he was wilful, uncooperative, unable to submit to authority, and averse to being rehabilitated." (Internal quotation marks omitted.)

In evaluating the defendant's arguments, we look for guidance in relevant appellate case law. In *State* v. *McElveen*, supra, 261 Conn. 214–15, our Supreme Court concluded that, despite the fact that the sentence imposed upon a defendant following his probation violation had expired, it was reasonably possible that collateral consequences flowed from the fact that his probation had been revoked. The court concluded that his appeal from the judgment of the trial court revoking his probation was not rendered moot due to the expiration of his sentence, and stated: "We appreciate that there is something unsettling about looking to future involvement with the criminal justice system as a predicate for our determination that a case such as the present one is not moot. Even under its more narrow application of the collateral consequences doctrine, however, the United States Supreme Court has relied upon collateral consequences that would arise in the event of future criminal behavior to conclude that an otherwise moot judgment of conviction merits review." Id.

In *State* v. *Preston*, 286 Conn. 367, 369, 944 A.2d 276 (2008), a defendant appealed from the judgment rendered following a probation revocation proceeding and claimed that the trial court (1) improperly found that he had violated his probation and (2) abused its discretion in revoking his probation. Relying on the fact that the defendant had pleaded guilty to the underlying offenses, thereby eliminating any live controversy about his conduct, this court dismissed his first claim as moot. Id. This court dismissed the second claim as moot for lack of a live controversy because it determined that the defendant failed to demonstrate that prejudicial consequences flowed from the revocation of his probation. Id., 369–70. Following a grant of certification to appeal, our Supreme Court reversed the judgment of this court with respect to the defendant's claim that the trial court had abused its discretion when it revoked his probation. Id., 370–71.

In *Preston*, our Supreme Court determined, initially, that a circumstance that renders moot a claim arising from the evidentiary phase of a revocation of probation hearing does not necessarily render moot a claim arising from the dispositional phase of the hearing. Id., 380. Thereafter, the court determined that it was reasonably possible that the defendant would suffer collateral consequences as a result of the revocation of his probation. Id., 382–84. Relying on *McElveen* and other relevant authority, the court reasoned that prejudice flowed from the revocation of probation. Id., 383. The court,

quoting this court's decision in *State* v. *Johnson*, 11 Conn. App. 251, 256, 527 A.2d 250 (1987), stated: " '[P]robation revocation is a blemish on [the defendant's] prison record which will affect his job opportunities and his standing in the community because it connotes wrongdoing and intractability and is a burden analogous and in addition to his criminal stigma.' " *State* v. *Preston*, supra, 383.

Finally, in *State* v. *Natal*, 113 Conn. App. 278, 280, 966 A.2d 331 (2009), the defendant appealed from the judgment of the trial court revoking his probation and committing him to the custody of the Commissioner of Correction for two years. He raised a claim related to the adjudicative phase of the probation revocation hearing and a claim related to the dispositional phase of the hearing. Id. Despite the fact that the defendant's sentence expired during the pendency of the appeal, this court explained that the appeal was not moot, stating: "Although the defendant's two year sentence appears to have expired . . . the present appeal is not moot due to the collateral consequences doctrine. In *State* v. *McElveen*, [supra, 261 Conn. 198], our Supreme Court determined that subject matter jurisdiction existed over an appeal from the revocation of probation even though the probationer subsequently completed his term of incarceration [during the pendency of the appeal]. The court reasoned that there were collateral consequences that reasonably could ensue as a result of a probation revocation, such as a negative impact on a defendant's standing in the community and the ability to secure employment. . . . Because there is a reasonable possibility that those collateral consequences will attach in the present case, the appeal is not moot." Id., 282 n.1.

We observe that "[i]t is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . The trial court's discretion, however, is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability." (Citation omitted; internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). A defendant's criminal record may shed light on his willingness to conform to socially acceptable behavior and, thus, is a relevant factor to consider at the time of sentencing. See General Statutes § 54-91a (c) (presentence investigation report shall include information regarding defendant's criminal history); *State* v. *Garvin*, 43 Conn. App. 142, 152, 682 A.2d 562 1996) ("[f]or the determination of sentences, justice generally requires consideration of more than the particular acts for which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensi-

ties of the offender" [internal quotation marks omitted]), aff'd, 242 Conn. 296, 699 A.2d 921 (1997).

A record that reflects that a defendant has violated his probation and that probation has been revoked sheds light on his criminal character because, as the defendant argues, such information reflects that the defendant's violations were serious enough to warrant a finding that the beneficial aspects of probation were no longer being served. As our case law reflects, the court's disposition gave rise to a reasonable possibility of prejudicial consequences for the defendant. See, e.g., *State* v. *Smith*, 207 Conn. 152, 161, 540 A.2d 679 (1988) ("[i]f the revocation of the defendant's probation stands, it may not only have an effect on his ability to obtain probation in the future but also affect his standing in the community in its connotation of wrongdoing, job opportunities and is a blemish on his record").

In the present case, the defendant challenges the court's exercise of discretion in the dispositional phase of the revocation of probation hearing. See *State* v. *Faraday*, 268 Conn. 174, 185–86, 842 A.2d 567 (2004) (abuse of discretion standard of review applies to court's determination in dispositional phase). On the basis of the foregoing authority, we are persuaded that, despite the expiration of the defendant's sentence, there is a reasonable possibility that, in the event that the defendant were to face a sentencing court in the future, the court's determination in revoking probation and sentencing the defendant to a period of incarceration may subject him to prejudicial collateral consequences. Additionally, we are persuaded that there is a reasonable possibility that, despite the expiration of the defendant's sentence, its presence on the defendant's criminal record could subject him to prejudicial consequences affecting not merely his employment opportunities, but his standing in the community generally.

If the court made improper findings in the dispositional phase of the hearing and relied on such findings in sentencing the defendant, this court has the ability to provide the defendant practical relief by granting the defendant a new dispositional hearing that could result in a more favorable outcome. In light of the prejudicial collateral consequences we have discussed, we retain jurisdiction over the appeal despite the fact that the defendant has completed serving his sentence. Accordingly, we reject the state's argument that the present appeal should be dismissed on mootness grounds.[6]

## II

Next, we address the defendant's claim that the court improperly relied on a fact that was not part of the record. We disagree.

The following additional information is relevant to the present claim. During the dispositional phase of the hearing, the court heard testimony from Yvonne Lee,

the defendant's probation officer; Matthew Steinfeld, a psychologist who provided substance abuse treatment to the defendant following his arrest for violating his probation; and Clint Cave, the defendant's cousin who had employed the defendant following his release from prison.

In its oral ruling in the dispositional phase of the hearing, which later became the court's signed, written memorandum of decision in accordance with Practice Book § 64-1 (a), the court found in relevant part: "[Y]ou had seven years hanging over your head. The thing that is just surprising to me is how [flippant] you seem to be with probation. . . . You . . . missed countless meetings with them. You never kept them posted on your address here in Connecticut. You kept moving along. You were very evasive with them. You went out of state without their permission. You had violations where you didn't follow through with [a program offered by] Catholic Charities. . . .

"[There were problems with the] nonviolence program where . . . you were given two opportunities. You didn't follow through. You had positive marijuana use in September and October in 2014. . . . Again, this is when you're meeting with probation. . . .

"[I]t shouldn't have taken you all these opportunities to finally, quote, unquote, get it. And there's a price to be paid for that. Again . . . anybody who is on probation is on thin ice. You know, in many ways, you were fortunate they didn't violate you, and I know they filed a warrant or one was signed in November of 2014, and they couldn't find you, and it took them a year to eventually serve the warrant on it. You had multiple arrests while on probation, and you had domestic matters, violation of protective orders. You had driving suspensions. So you [engaged in] numerous [types of] criminal activity during your course of probation. Listen, to your credit, the testimony from Dr. Steinfeld was positive for you. He did indicate that you were a good part of the group, that you graduated from the group, that your testing for the drugs [had] been going down, and he felt that . . . his plan and their treatment of you has [had] a positive effect on you. But as you heard earlier, you're in violation. There's many violations here. . . .

"And you heard the probation officers. They don't want to . . . put you back on probation because you never showed up at half the meetings. You never followed through with what you were supposed to do. I mean, you dropped the ball countless, countless times. So there's a penalty to be paid for that. So I feel out of all the facts I heard at this hearing, the arguments of the attorneys, and your comments, that a degree of incarceration is appropriate." The court then revoked probation and imposed a sentence of eighteen months of incarceration.

The defendant argues that the court improperly found that a warrant officer, or members of law enforcement generally, had looked for him for a year to serve the violation of probation warrant on him. He argues that the court substantially relied on this improper finding in reaching its disposition. The defendant argues that "the record reflects that the warrant was not served for nearly a year after it was signed, [but] there was no evidence that the authorities ever searched for the defendant. Moreover, there was no evidence that the defendant tried to elude capture during this period."[7] The defendant correctly acknowledges that he did not object to the court's reliance on its findings at the time of trial. He seeks review of this unpreserved claim under the bypass rule set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8] We will review the claim under *Golding* because the record is adequate for review and the claim implicates the defendant's due process right not to be sentenced on the basis of improper factors or erroneous information. See *State* v. *Thompson*, 197 Conn. 67, 77, 495 A.2d 1054 (1985).

"The standard of review of the trial court's decision at the [dispositional] phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"In this exercise of broad discretion, however, the trial court must continue to comport with the requirements of due process. The United States Supreme Court has recognized that [b]oth the probationer . . . and the [s]tate have interests in the accurate finding of fact and the informed use of discretion—the probationer . . . to insure that his liberty is not unjustifiably taken away and the [s]tate to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. . . . Our review of whether the trial court engaged in such an informed use of discretion . . . is in turn governed by the well established standards for reviewing a trial court's exercise of similarly broad discretion at sentencing in a criminal trial.

"It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . In keeping with this principle, we have recognized that [a] sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissi-

ble at trial. . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . .

"We have cautioned, however, that [t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As we have long recognized, in keeping with due process, a defendant may not be sentenced on the basis of improper factors or erroneous information. . . . Further, courts must be concerned not merely when a sentencing judge has relied on demonstrably false information, but [also] when the sentencing process created a significant possibility that misinformation infected the decision. . . . Nonetheless, [a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion. . . .

"In considering a claim that the trial court relied on unreliable information at sentencing, we therefore conduct a two-pronged inquiry: first, did the information at issue contain some minimal indicium of reliability; second, if it did not, did the trial court substantially rely on this improper information in fashioning its ultimate sentence? . . .

"With respect to the threshold inquiry into reliability, we note that [t]here is no simple formula for determining what information considered by a sentencing judge is sufficiently reliable to meet the requirements of due process. The question must be answered on a case by case basis." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Altajir*, 303 Conn. 304, 315–18, 33 A.3d 193 (2012).

Having set forth applicable principles, we turn to the evidence before the court. At the violation of probation trial, the defendant's probation officer, Lee, testified that prior to drafting an arrest warrant in November, 2014, she warned the defendant that he was in danger of a violation. Lee testified that the warrant was not served on the petitioner until October, 2015. She testified, as well, that, after he was found to be in violation, she told the defendant that, because of his violation, he did not have to "report to probation." Additionally, Lee testified that the defendant did not make any efforts with her to turn himself in on the violation of probation warrant. The court questioned Lee about the delay in serving the warrant, as follows:

"The Court: Ms. Lee . . . did you file a violation of probation warrant against this defendant in October, 2014?

"[The Witness]: I believe . . . [November 12, 2014]

was when we decided to go forward with the violation.

"The Court: So when you say you made a decision to go forward with the violation, do you actually get a warrant and sort of hold it in abeyance to see how the defendant responds? I'm just trying to understand your testimony.

"[The Witness]: Well, we go forward. We write the warrant, and then it goes to the court to get signed off on.

"The Court: All right. So that was in October of 2014?

"[The Witness]: November of 2014.

"The Court: All right. . . . And what happened to the warrant? . . .

"[The Witness]: The warrant will go to our warrant officer. They make attempts to have it served.

"The Court: So you had a warrant signed back in 2014?

"[The Witness]: [It] was signed . . . .

"[The Prosecutor]: Your Honor, I believe the warrant was signed by the court on November 28, 2014. . . . Signed by Judge Clifford.

"The Court: So then what happened to that warrant?

"[The Witness]: The warrant sat, and they made it—

"The Court: Sat where?

"[The Witness]: It sits with our warrant officer. They try to make attempts to get in contact with the defendant to turn himself in, and they also I believe get in contact with the local [police departments] to make attempts to go—

"The Court: But you're now his probation officer at this time?

"[The Witness]: I am. Yes.

"The Court: And you told him, you know, the judge approved the warrant for the violations we've gone through. And . . . that warrant was not served on him . . . for another [twelve] months?

"[The Witness]: That's correct.

"The Court: And is that usual?

"[The Witness]: No. Usually they're served much quicker.

"The Court: Is there a reason why it wasn't served on him for [twelve] months? . . . Did you still hold back on the warrant to see if he would sort of respond to the requests and the conditions of his probation or not?

"[The Witness]: Oh, no, not at all.

"The Court: So it had . . . no connection to that?

"[The Witness]: No.

"The Court: You had a warrant signed in 2014, and it just so happens it just wasn't served on him until 2015?

"[The Witness]: Yes.

"The Court: A year later?

"[The Witness]: Yes.

"The Court: Even though you saw him several times during that time frame?

"[The Witness]: No, I didn't see him several times. No.

"The Court: Okay. Why didn't you see him several times during that time frame?

"[The Witness]: Once the violation is issued . . . his probation is put on pause. . . .

"The Court: Doesn't he have the same conditions of probation even though . . . the warrant is served upon him?

"[The Witness]: Unless it's ordered a supervised violation, which that didn't occur until the warrant was served in October of 2015.

"The Court: So then when . . . it's served upon him, this defendant, like any other defendant, then [he] is obliged to comply with the conditions of probation during the pendency of the violation; is that correct?

"[The Witness]: Yes.

"The Court: So . . . it sort of [is] in limbo . . . from October, 2014, until service about [eleven] months later?

"[The Witness]: Yes."

The evidence supports several conclusions. First, the defendant's arrest warrant was issued on November 28, 2014, but it was not served on him until October, 2015. Second, the defendant was aware that he was at risk of violating his probation, learned that a warrant had been issued, and did not take any steps to turn himself in with respect to the warrant. Third, the usual practice of Lee's office is to forward arrest warrants to a warrant officer who, perhaps in conjunction with local law enforcement, will serve it quickly. Fourth, the lengthy delay in serving the warrant on the defendant was unusual and not attributable to Lee or her colleagues. Additionally, among the findings made by the court in the dispositional phase of the hearing that the defendant does not challenge are the court's findings that, prior to the time that the violation of probation warrant was issued, he failed to keep probation informed of his whereabouts, he continued to "mov[e] along," and he was "very evasive" with probation.

On the basis of the foregoing facts, we conclude that the information on which the court relied satisfied the

requisite standard of reliability. Specifically, the court reasonably inferred from the facts that the warrant officer made reasonable efforts to locate the defendant but was unable to find him and, consequently, it took law enforcement nearly a year to serve the warrant that had been issued in November of 2014. There was evidence that the defendant's whereabouts were not readily ascertainable. Lee testified that the defendant was no longer required to comply with the conditions of his probation between the time that the violation of probation warrant was issued in November, 2014, until the time that the warrant ultimately was served on him in October, 2015. Nonetheless, the evidence supported a finding that, during the defendant's probationary period that commenced in November, 2011, he moved frequently and, contrary to the conditions of his probation, did not keep probation informed of his whereabouts. Moreover, after the defendant learned of the warrant, he did not take any steps to make his whereabouts known or turn himself in with respect to the warrant. "The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224, 733 A.2d 156 (1999). The defendant has not demonstrated that the inference drawn by the court was unreasonable or unjustifiable. The court's inference, that the warrant officer was unable to locate the defendant for nearly a year, was not the product of speculation or conjecture; it was a logical conclusion on the basis of the evidence.

For the foregoing reasons, we conclude that the defendant has failed to demonstrate that a constitutional violation exists and that it deprived him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant acknowledges that he also was placed on probation as a result of his conviction in a separate criminal matter. In a separate probation revocation proceeding that occurred on May 13, 2016, which took place following the hearing at issue in the present case, his probation in that matter was terminated after he admitted that he had violated his conditions of probation.

[2] Prior to his probationary period, the defendant signed a written "conditions of probation" form that set forth standard conditions of probation as well as the court-ordered special conditions of probation, thereby representing that his probation officer had reviewed the conditions with him, that he understood the conditions, and that he would abide by the conditions.

[3] The defendant, exercising his right of allocution, admitted that he had used marijuana during his probationary period, stated that he was trying to comply with his probation requirements, and asked the court for "a little leniency."

[4] In his principal brief, the defendant also argued that the court erroneously found and relied on the fact that he had failed to keep probation informed of his address. In his reply brief, the defendant expressly abandoned this aspect of his claim.

[5] We note that the defendant already has suffered from what he believes to be the negative effects of incarceration as a result of his being sentenced in 1999 to a term of incarceration for his commission of the underlying crimes. We interpret his argument to mean that the *additional* sentence of incarceration that resulted from the present probation revocation hearing

caused him further prejudice with respect to employment and his standing in the community generally.

⁶ In light of our conclusion that the present appeal falls within the collateral consequences exception to the mootness doctrine, we need not consider the defendant's reliance on the exception for appeals involving issues that are capable of repetition yet evade review.

⁷ As reflected in our discussion of the defendant's argument, part of his argument is that the court found and relied on the fact that he had "tried to elude capture." The court did not expressly find that the defendant attempted to elude capture. The court found that the warrant officer was unable to find the defendant and that this had resulted in a lengthy delay in serving the warrant on him.

⁸ As modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), the *Golding* doctrine provides that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40. "The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. . . . The defendant also bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. . . . Finally, if we are persuaded that the merits of the defendant's claim should be addressed, we will review it and arrive at a conclusion as to whether the alleged constitutional violation . . . exists and whether it . . . deprived the defendant of a fair trial." (Citations omitted.) Id., 240–41.